UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOYA HANKINS, MARCUS AMICK and
AMOS ARAUZ,

        Plaintiffs,

v.

TITMOUSE, INC. a California corporation,
AMAZON, INC., a Washington corporation,
CHRIS PRYNOSKI, SHANNON PRYNOSKI,
MARK BROOKS, and TAL MOSCOVICI,

        Defendants.

Case No.
Honorable:
Magistrate:

JOSEPH A. BELLANCA (P71649)
MATTHEW J. TURCHYN (P76482)
Hertz Schram PC
Attorneys for Plaintiffs
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000 // Fax (248) 335-3346
JBellanca@HertzSchram.com
MTurchyn@HertzSchram.com

**COMPLAINT**
**AND**
**DEMAND FOR JURY TRIAL**

Plaintiffs, Toya Hankins ("Hankins"), Marcus Amick ("Amick"), and Amos

Arauz ("Arauz") (collectively "Plaintiffs") allege as follows for their Complaint

against Defendants Titmouse, Inc. ("Titmouse"), Amazon, Inc. ("Amazon"), Chris

Prynoski ("Chris Prynoski"), Shannon Prynoski ("Shannon Prynoski"), Mark Brooks ("Brooks") and Tal Moscovici ("Moscovici") (collectively "Defendants"):

## PARTIES

1.      Plaintiff Hankins is an individual residing in Detroit, Michigan in Wayne County.

2.      Plaintiff Amick is an individual residing in Toledo, Ohio in Lucas County.

3.      Plaintiff Arauz is an individual residing in Maricopa, Arizona in Pinal County.

4.      Plaintiffs conduct business in and throughout the state of Michigan.

5.      Upon information and belief, Defendant Titmouse is a corporation formed and organized under the laws of the state of California with its principal place of business located at 6616 Lexington Avenue, Los Angeles, California 90038.

6.      Defendant Amazon is a corporation formed and organized under the laws of the state of Washington with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

7.      Defendant Chris Prynoski is the president and co-owner of Defendant Titmouse and, upon information and belief, resides in or near Los Angeles, California, and conducts business throughout the State of Michigan and the United States.

8.      Defendant Shannon Prynoski is the vice president and co-owner of Defendant Titmouse and, upon information and belief, resides in or near Los Angeles, California, and conducts business throughout the State of Michigan and the United States.

9.      At all relevant times, Defendant Brooks was an employee of Defendant Titmouse and, upon information and belief, resides in or near Los Angeles, California while conducting business throughout the State of Michigan and the United States.

10.     At all relevant times, Defendant Moscovici was an employee of Defendant Titmouse and, upon information and belief, resides in or near Los Angeles, California while conducting business throughout the State of Michigan and the United States.

## **JURISDICTION AND VENUE**

11.     This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*. (the "Copyright Act"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a). The Court also has jurisdiction over the supplemental state law claims asserted in this action pursuant to 28 U.S.C. §§ 1332 and 1367.

12.     This Court has personal jurisdiction over each of the Defendants on the grounds that: (a) the wrongful action alleged herein took place in Michigan; (b)

3

Defendants regularly solicit and transact business in Michigan; and (c) Defendants have committed intentional and deliberate acts within the State of Michigan that caused foreseeable injuries to Plaintiffs in Michigan.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## **GENERAL ALLEGATIONS**

14.     Plaintiffs collectively created and wrote an original animated series titled *Hillside Lakes*.

15.     *Hillside Lakes* is an original work based on Plaintiffs' personal experiences, life stories, observations, and circumstances while living in a residential area in Hollywood which served as the inspiration for the fictitious *Hillside Lakes* neighborhood, apartment complex, and relationships amongst characters in *Hillside Lakes*.

16.     The characters in *Hillside Lakes* are a unique group of culturally diverse friends who reside in a fictional version of a Los Angeles neighborhood.

17.     Plaintiffs developed *Hillside Lakes* over a period of at least ten years.

18.     Plaintiffs are the sole and exclusive owners of United States Copyright Registration Number Pau004109634 ("Registration") for the work titled *Hillside Lakes*, *The Big Break*. A copy of the Registration is attached hereto as **Exhibit 1**.

4

19.     As the sole and exclusive owners of the Registration, Plaintiffs are the sole and exclusive owners of all rights, titles, and interests in and to *Hillside Lakes*.

20.     Plaintiffs' sole and exclusive rights in and to *Hillside Lakes* include the right of reproduction, adaptation, distribution, performance and display, and to prevent third parties from any of the foregoing.

21.     In August 2013, Plaintiffs engaged Defendant Moscovici as an independent contractor to assist in the creation of a *Hillside Lakes* animatic based on the Hillside Lakes script and characters created, written, and developed solely by Plaintiffs and the directional notes provided by Plaintiffs.

22.     Defendant Moscovici was engaged as an independent contractor.

23.     Defendant Moscovici confirmed his engagement by rendering his services to and for Plaintiffs.

24.     In connection with Plaintiff's engagement of Defendant Moscovici, Plaintiffs provided Defendant Moscovici with access to and copies of their original *Hillside Lakes* materials ("Hillside Lakes Materials") including, without limitation, animatics, scripts, sizzle reels, notes, and a pitch bible.

25.     The Hillside Lakes Materials include specific plot details, unique character descriptions, and episode information.

26.     No rights in or to *Hillside Lakes* or any of the Hillside Lakes Materials were transferred or conveyed to Defendant Moscovici at any time.

4856-4348-8238, v. 3

27.     Defendant Moscovici does not own or control any rights in or to *Hillside Lakes* or the Hillside Lakes Materials.

28.     Defendant Moscovici proudly touted his engagement on his professional LinkedIn profile, a screenshot of which is attached hereto as **Exhibit 2**.

29.     Defendant Moscovici and Plaintiff Amick entered into a Confidentiality and Nondisclosure Agreement dated August 12, 2013 ("NDA"), a copy of which is attached hereto as **Exhibit 3**.

30.     Defendant Moscovici expressly promised not to retain or distribute the Hillside Lakes Materials or any confidential or proprietary information about or concerning *Hillside Lakes* without Plaintiff Amick's permission. (Ex. 3, P 2)

31.     Plaintiff Amick did not grant Defendant Moscovici permission to retain, distribute or disclose the Hillside Lakes Materials or any confidential or proprietary information about or concerning *Hillside Lakes*.

32.     The Hillside Lakes Materials are proprietary to Plaintiffs.

33.     Upon information and belief, in violation of the NDA, Defendant Moscovici wrongfully retained copies of the Hillside Lakes Materials without the knowledge or consent of Plaintiffs.

34.     During his engagement by Plaintiffs and thereafter, Defendant Moscovici has not been Plaintiffs' authorized agent and has not been authorized to act on behalf of Plaintiffs at any time or for any reason.

6

35.     Following his engagement by Plaintiffs, Defendant Moscovici was engaged as a storyboard artist by Defendant Titmouse.

36.     At the time Defendant Moscovici was employed by or rendering services to Defendant Titmouse, Plaintiff Amick was engaged in progressive discussions with Defendant Titmouse through Defendant Brooks, an employee of Defendant Titmouse, regarding a relationship between Plaintiffs and Defendant Titmouse in connection with the exploitation of *Hillside Lakes*.

37.     Plaintiff Amick and Defendant Brooks communicated via email regarding such relationship.

38.     Defendant Brooks expressed an interest in Plaintiffs' series, *Hillside Lakes*.

39.     Defendant Brooks requested that Plaintiff Amick send him the Hillside Lakes Materials with full knowledge that *Hillside Lakes* is based on Plaintiffs' personal experiences living in a Los Angeles neighborhood.

40.     Plaintiff Amick sent the Hillside Lakes Materials to Defendant Brooks.

41.     Directly contradicting the substance and tone of the conversations and correspondence between Plaintiff Amick and Defendant Brooks and following delivery of the Hillside Lakes Materials, Defendant Brooks advised Plaintiff Amick that Defendant Titmouse was not interested in furthering a relationship between the parties.

42.     Defendant Titmouse's chief creative officer, Antonio Canobbi, has stated in published interviews that Defendant Titmouse encourages its staff to submit show ideas and frequently develops the same.

43.     In late 2021, Plaintiffs received multiple inquiries from various unrelated third parties regarding the similarity between *Hillside Lakes* and a new animated series called *Fairfax*.

44.     *Fairfax* is an animated series allegedly created by Defendant Titmouse and distributed by Defendant Amazon.

45.     *Fairfax* is an animated series that follows a group of culturally diverse friends created and produced by Defendant Titmouse and its officers, directors and employees, namely, Defendant Chris Prynoski, Defendant Shannon Prynoski, Defendant Moscovici, and Defendant Brooks (collectively with Defendant Titmouse, the "Titmouse Defendants").

46.     Plaintiffs reviewed the *Fairfax* series and discovered key elements of Plaintiffs' *Hillside Lakes* were copied and included in multiple episodes of Defendant's *Fairfax* series.

47.     Further review by Plaintiffs uncovered an alarming number of substantial similarities between key and unique elements of Plaintiffs' original *Hillside Lakes* and the infringing *Fairfax* as produced by the Titmouse Defendants.

48.     Throughout the course of production of Fairfax and after the Titmouse Defendants' receipt of the Hillside Lakes Materials, the Titmouse Defendants prominently included unique and distinct key elements of *Hillside Lakes* in and throughout *Fairfax*.

49.     The scenes and plots scenarios in Defendants' *Fairfax* are copies of or substantially similar to the original scenes and plot scenarios of Plaintiffs' *Hillside Lakes*.

50.     The character traits of characters in Defendants' *Fairfax* and the expressions, interactions, and relationships between them are the same as or substantially similar to those of Plaintiffs' *Hillside Lakes*' characters.

## **DEFENDANT AMAZON**

51.     Upon information and belief, Defendant Titmouse licensed distribution and other rights to the infringing *Fairfax* series to Defendant Amazon in all media.

52.     Defendant Amazon has distributed and otherwise exploited the infringing *Fairfax* internationally, including throughout the State of Michigan and this District.

53.     As a result of Defendant Amazon's worldwide distribution, the infringing *Fairfax* series has been made available to millions of end users

throughout the world resulting in increased revenue and brand recognition for all Defendants, without Plaintiffs' knowledge or consent.

## ACCESS

54.    Defendants' access Plaintiffs' intellectual property is clearly demonstrated by Defendant Moscovici's retention of the Hillside Lakes Materials in blatant disregard for his obligations under the NDA.

55.    Defendants' access to Plaintiffs' intellectual property is again demonstrated through the Titmouse Defendants' receipt of the Hillside Lakes Materials directly from Plaintiff Amick.

## SUBSTANTIAL SIMILARITIES: PLOT AND DIALOGUE

56.    Plaintiffs' *Hillside Lakes* and Defendants' Fairfax are both centered around a culturally diverse group of friends in fictional neighborhoods of Los Angeles.

57.    Plaintiffs' original theme song and color-popping animation style graphic effects are copied and used in the introduction of each episode of Defendant's infringing work.

58.    Plaintiffs' *Hillside Lakes* opens with the voice of wise-cracking birds, ends with a wise crack from the same birds, and shows the unique images of a street corner with handpicked music in the background—all of which Defendants copied and use in the infringing *Fairfax*.

59.    The opening and closing scene of both series feature a car crashing into a typically immobile streetside utility object or dialogue directly regarding such act.

60.    Plaintiffs' *Hillside Lakes* storyline is centered on introducing the characters as they gather for a cultural opportunity to appear on a reality show, while the central storyline of the infringing *Fairfax* mimics that of *Hillside Lakes* and instead of gathering for an audition, *Fairfax's* characters gather for a cultural fashion opportunity.

61.    The entire plot of Plaintiffs' *Hillside Lakes* is centered around each neighborhood development and the unique events that transpire within each such development, which Defendants copy and use in the infringing *Fairfax*.

62.    Plaintiffs include a specific television celebrity doctor as a central character in the Hollywood storyline of its plot.

63.    Plaintiffs' inclusion of such television celebrity doctor is based on Plaintiff Arauz's unique personal experience in working on a production with a television celebrity doctor.

64.    Defendants also include a television celebrity doctor who appears and sounds the same as or substantially similar to the television celebrity doctor first included by Plaintiffs.

11

65.     Both television celebrity doctors are significant characters in the Hollywood storyline of each respective animated series.

66.     Plaintiffs' *Hillside Lakes* series includes an episode in which a highly valued pet is kidnapped and held for ransom, which Defendants copy and include in Fairfax.

67.     Similarly, wise cracking birds reference being kidnapped in the same manner and under similar circumstances in each animated series.

68.     A continuing and quirky part of the *Hillside Lakes* storyline includes characters wildly licking popsicles, which is mirrored throughout Defendants' *Fairfax*.

69.     A unique scene in *Hillside Lakes* includes a supporting character wearing a pair of tight blue swimming trunks and swimming around with a group of young fans which is mirrored in a scene in *Fairfax* in which a character wearing a pair of tight blue swimming trunks is swimming in a sea of "heart" likes, the social media equivalent of fans.

70.     Both animated series include a bizarre and out-of-the-ordinary street encounter with a transient current celebrity and a supporting character who parasails into a crowd of cheering fans.

71.     The final act of the infringing *Fairfax* deposits a car hitting a pole in the same manner and mirroring the dialogue of *Hillside Lakes*.

## SUBSTANTIAL SIMILARITIES:
## CHARACTERS AND CHARACTER RELATIONSHIPS

72.    "Truman," the principal character in Defendants' *Fairfax*, is a mirror image of Plaintiff's principal character in *Hillside Lakes*, "Tony."

73.    Plaintiff's "Tony" and Defendant's "Truman" have the same voice, tone and inflection; have a high-top fade hairstyle; wear the same clothes and clothing style; and share cocky demeanors and side jobs, all of which are central to each character.

74.    Defendants' central supporting character, "P-Dub," is the same character as Plaintiffs' "Buttah"—both characters share the same complexion and matching facial hair, tall and muscular build, voice and cadence of speech, and tone of voice.

75.    Plaintiffs' "Buttah" is further duplicated by Defendants' "P-Dub" as each of these central characters share the same "old school" mentality, lack of mindfulness, and are an ongoing nuisance to other central characters in each respective animated series.

76.    The relationship between "Truman" and "P-Dub" in *Fairfax* is unquestionably based on and copied from the relationship between "Tony" and "Buttah" in Plaintiff's *Hillside Lakes*.

77.     Aside from uniquely created nicknames, P-Dub and Buttah both act as mentors and figures of authority to the principal character in *Fairfax* and *Hillside Lakes*, respectively.

78.     Truman, the principal character in *Fairfax*, seeks the sage advice of P-Dub repeatedly throughout multiple episodes of *Fairfax*, copying the mentor-mentee relationship of Tony and Buttah in *Hillside Lakes*.

79.     The voice, cadence and tone of Defendants' *Fairfax* character, Dale, is the same as or substantially similar to the voice, cadence and tone of Plaintiffs' *Hillside Lakes* character, Eric.

80.     Mike's signature and uniquely recorded tagline of "Whaaaaaaat?!" in a high-pitched and drawn-out manner in *Hillside Lakes* is the exact same tagline delivered by Defendant's *Fairfax* character, Dale.

81.     Upon information and belief, Defendant's use and sample Plaintiff's recording of Mike's tagline in *Fairfax* without Plaintiffs' consent.

82.     Defendants' *Fairfax* prominently features raunchy, foul-mouthed birds who provide off-the-cuff commentary on the events and occurrences in their fictional towns throughout each episode of Fairfax, mirroring the same raunchy, foul-mouthed bird in Plaintiffs' *Hillside Lakes*.

83. The voice, cadence, and tone of Plaintiffs' character, Sam, in the key opening scene of *Hillside Lakes* is copied by Defendants' character, Derica and included in a key opening scene in *Fairfax*.

84. Defendants' character Melody Harper is an ostentatious celebrity and cultural influencer, a direct replica of Plaintiffs' character, Nikki, both of whom share the same type of conversations and interactions with other key characters in their respective animated series.

## SUBSTANTIAL SIMILARITIES: SETTING

85. *Hillside Lakes* and the infringing *Fairfax* are centered around a culturally diverse group of misfit friends in a fictional version of a Los Angeles neighborhood with the same or substantially similar geography, ethnic demographics, age demographics, and income levels.

86. *Fairfax*'s locations and references throughout the production are copied and extracted directly from the unique *Hillside Lakes*' pitch bible: a pun-filled neighborhood pet store, a white Rastafarian/Bohemian-type character who operates a beverage bar that also serves as a medical marijuana hangout.

87. Defendants have been generating revenue, profits, and goodwill through the exploitation of all rights in and to the infringing *Fairfax* without Plaintiffs' knowledge or consent.

88.     Upon information and belief, the Titmouse Defendants have each generated revenue, profits, and goodwill through the exploitation of the infringing *Fairfax* without Plaintiffs' knowledge or consent.

89.     The unique and creative protectable elements of *Hillside Lakes* have been unquestionably and intentionally planted throughout *Fairfax* bringing *Fairfax* to life.

90.     Defendants have failed to provide Plaintiffs with credit as creators or co-creators of *Fairfax*.

91.     Defendants' willful and unauthorized use and exploitation of the infringing *Fairfax*, which undeniably copies or is substantially similar to unique and protectable aspects of Plaintiffs' *Hillside Lakes*, constitutes copyright infringement and contributory infringement pursuant to 17 U.S.C. § 501, entitling Plaintiffs to actual or statutory damages plus costs and attorney fees under the Copyright Act, including any and all profits attributable thereto.

92.     The substantial similarity between *Hillside Lakes* and the infringing *Fairfax* can only be explained by Defendants' unauthorized use of Plaintiffs' intellectual property which includes, but is not limited to, the Registration.

93.     Defendants' undeniable access through multiple points and parties combined with Defendants' inclusion of the same and substantially similar

16

protectable elements result in blatant infringement of Plaintiffs' valuable intellectual property.

## COUNT I
## COPYRIGHT INFRINGEMENT

94.     Plaintiffs repeat and reallege each of the foregoing paragraphs, as though fully set forth herein.

95.     Defendants' unauthorized use, reproduction, licensing, distribution, transmission, and exploitation of *Fairfax*, and/or authorizing any of the foregoing, infringes Plaintiffs' exclusive rights in the original work, *Hillside Lakes*, which Defendants wrongfully copied or created substantially similar derivatives thereof and used in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

96.     Defendants' conduct has at all times been knowing and willful.

97.     Each act of infringement by Defendants constitutes a separate and distinct act of infringement, separately actionable under the Copyright Act, 17 U.S.C. § 106.

98.     Defendants' wrongful and intentional conduct has caused Plaintiffs irreparable harm.

99.     Defendants' wrongful and intentional conduct has caused Plaintiffs significant monetary damages.

100.   Pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages of $150,000 per instance of infringement and per method of

4856-4348-8238, v. 3

distribution (download, streaming, physical sales, broadcast, etc., inclusive of all re-runs and re-airs). Alternatively, at Plaintiffs' election and pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits attributable to the infringement, as will be proven at trial.

101. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

102. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrighted work and exclusive rights under the Copyright Act.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

103. Plaintiffs repeat and reallege each of the foregoing paragraphs, as though fully set forth herein.

104. Defendants have directly infringed Plaintiffs' copyrighted works.

105. Defendants induced, caused and materially contributed to the infringing acts of others (including all co-Defendants) by encouraging, inducing, allowing, and assisting others to reproduce and distribute the infringing *Fairfax*,

18

which directly copies and substantially similar protectable elements of Plaintiffs' original work without Plaintiffs' consent.

106. Defendants had knowledge of the infringing acts relating to Plaintiffs' copyrighted works.

107. The acts and conduct of Defendants as alleged above in this Complaint constitute contributory copyright infringement.

## COUNT III
## VICARIOUS COPYRIGHT INFRINGEMENT
## (TITMOUSE DEFENDANTS)

108. Plaintiffs repeat and reallege each of the foregoing paragraphs, as though fully set forth herein.

109. The Titmouse Defendants have directly infringed on Plaintiffs' copyrighted work.

110. The Titmouse Defendants had the right and ability to control the infringing acts of the individuals or entities who directly infringed Plaintiffs' copyrighted works.

111. The acts and conduct of Defendants as alleged herein constitute vicarious copyright infringement.

## COUNT IV
## UNJUST ENRICHMENT

112. Plaintiffs repeat and reallege each of the foregoing paragraphs, as though fully set forth herein.

113.   Defendants have received and obtained substantial gains, advantages, and benefits by wrongfully receiving and retaining revenue and other benefits through the exploitation of an animated series that copies, is substantially similar to, and blatantly infringes on Plaintiffs' original and unique animated series, *Hillside Lakes*.

114.   It would be unjust and inequitable for Defendants to retain such gains, advantages and benefits.

115.   Defendants have been unjustly enriched as a result of the retention of such gains, advantages and benefits.

116.   Plaintiffs have suffered significant monetary damages as a direct result of Defendants' being unjustly enriched.

<div align="center">

**COUNT V**
**BREACH OF CONTRACT**
**(DEFENDANT MOSCOVICI)**

</div>

117.   Plaintiffs repeat and reallege each of the foregoing paragraphs, as though fully set forth herein.

118.   The NDA is a valid contract between Plaintiff Amick and Defendant Moscovici.

119.   Defendant Moscovici breached the NDA by disclosing Plaintiff Amick's confidential and proprietary information, namely *Hillside Lakes*, to the Titmouse Defendants.

120.   Plaintiffs have suffered significant monetary and non-monetary damages as a result of Defendant Moscovici's breach of the NDA.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this honorable Court enter judgment against Defendants as follows:

1.     A declaration that each and all of Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

2.     A permanent injunction requiring Defendants and Defendants' agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or anyone of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of Plaintiffs' rights protected by the Copyright Act;

3.     For statutory damages pursuant to 17 U.S.C. § 504(c) of $150,000 per episode of *Fairfax* and per method of distribution (download, streaming, physical sales, broadcast, etc., inclusive of all re-runs and re-airs), or in such other amounts as may be determined at trial, or, at Plaintiffs' election, pursuant to 17 U.S.C. §

504(b), Plaintiffs' actual damages, including each and all of Defendants' profits attributable to the infringement, as will be proven at trial;

4.      Awarding Plaintiffs their attorneys' fees and full costs, pursuant to 17 U.S.C. § 505;

5.      Ordering Plaintiffs co-creator credit in all uses and recordings of Fairfax and in all instances where such credit is customarily provided;

6.      For pre-judgment interest according to law, as applicable;

7.      Awarding Plaintiffs trial by jury on all issues triable by a jury; and

8.      Such other and further relief as the Court deems just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,
HERTZ SCHRAM, PC
By:   /Joseph A. Bellanca
Joseph A. Bellanca (P71649)
Matthew Turchyn (P76482)
Attorneys for Plaintiffs
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302-0183
248-335-5000

</div>

Dated: October 10, 2024